IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DEMITRIA BUTLER-SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21-CV-598-WKW |
| | ) | [WO] |
| HYUNDAI MOTOR | ) | |
| MANUFACTURING ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Demitria Butler-Smith worked in the engine production department of Hyundai Motor Manufacturing Alabama (HMMA). On or about September 23, 2019, Ms. Butler-Smith began to experience pain in her knee and swelling in her leg. She was approved for leave, received short-term disability payments for six months, and then received long-term disability payments. On August 20, 2020, HMMA wrote to Ms. Butler-Smith and told her that HMMA would administratively terminate her employment unless she 1) returned to work at her assigned job by September 23, 2020; 2) provided a definite date in the foreseeable future that she would return to work with or without a reasonable accommodation; 3) proposed a reasonable accommodation that would allow her to return by a definitive date in the foreseeable future; or 4) applied for other available positions at HMMA that she was

qualified for and that would fit her medical restrictions.  She took none of these steps, and HMMA administratively terminated her employment on October 5, 2020.

On September 8, 2021, Ms. Butler-Smith filed this suit claiming that HMMA discriminated against her in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, retaliated against her in violation of the ADA, 42 U.S.C. § 12203, and retaliated against her in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(2).  Defendant moved for summary judgment (Doc. # 19); Plaintiff responded (Doc. # 24); and Defendant replied (Doc. # 25).  For the reasons discussed below, Defendant's motion for summary judgment will be granted.

## I.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 29 U.S.C. § 2617.  Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant without a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "[A]t the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he summary

judgment rule applies in job discrimination cases just as in other cases."  *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000) (en banc)).

## III.  BACKGROUND

The following facts are undisputed.  Fed. R. Civ. P. 56(e)(2).  Before discussing Ms. Butler-Smith's employment with HMMA and termination by HMMA, an overview of HMMA, its policies, and its processes is necessary.

## A.   <u>HMMA, Its Policies, and Its Processes</u>

"HMMA operates an automobile manufacturing facility in Montgomery, Alabama," where it "produces the Hyundai Elantra, Sonata, and Santa Fe."  (Doc. # 21-3 at 2.)[1]  The factory includes a welding shop, a stamping shop, a general assembly shop, three engine shops, a paint shop, and a two-mile test track.  (Doc. # 21-3 at 2.)  HMMA "employs approximately 3,000 Team Members."  (Doc. # 21-3 at 2.)[2]

HMMA "is committed to not discriminating against employees due to protected statuses, including disability" and to "not retaliating against employees who engage[] in protected conduct."  (Doc. # 21-3 at 2.)  "HMMA is also committed to complying with the FMLA" by "returning employees to their prior positions" if

---

[1] All citations use the pagination as designated by the CM/ECF filing system.

[2] "HMMA refers to its employees as Team Members."  (Doc. # 21-3 at 2 n.1.)

4

they can safely do so and by "not retaliating against employees using FMLA leave." (Doc. # 21-3 at 3.)  HMMA's employee handbook includes an equal employment opportunity policy.  (Doc. # 21-1 at 97, 112; Doc. # 21-2 at 5.)  That policy prohibits discrimination or retaliation against an employee based on disability.  (Doc. # 21-1 at 97, 112; Doc. # 21-2 at 5.)  The policy states that "HMMA will provide reasonable accommodations to qualified individuals with disabilities when necessary to enable them to perform the job's essential functions and [to] enjoy the job's benefits." (Doc. # 21-1 at 97, 112; Doc. # 21-2 at 5.)

But how does HMMA provide reasonable accommodations for Team Members with disabilities?  When a Team Member's physician tells her that she "has temporary restrictions on [her] ability to perform [her] job, [she] submit[s] those restrictions . . . to Progressive Health, a third-party contractor."  (Doc. # 21-3 at 3.)  "Progressive Health reviews the" temporary restrictions with the Team Member and then "relays the restrictions to an HMMA Safety Specialist."  (Doc. # 21-6 at 5.)  The Safety Specialist "will review the restrictions," survey the Team Member's workspace, observe how the Team Member's job is performed, and note aspects of the job that might be affected by the temporary restrictions.  (Doc. # 21-6 at 5.)  Based on the restrictions, the Specialist "determines if the employee can perform the essential functions of [her] job . . . with or without reasonable accommodation."  (Doc. # 21-6 at 5.)  "The Safety Specialist may not meet with or

consult with the Team Member at issue to see what [she is] physically capable of doing.  Rather, the Safety Specialist typically relies solely on the restrictions set by the Team Member's health care provider(s)."  (Doc. # 21-6 at 5.)  Progressive Health then "documents the Safety Specialist's accommodation determination on a Duty Disposition Report."  (Doc. # 21-6 at 5.)  "Where it does not impose an undue hardship, HMMA may modify tasks, schedules[,] or equipment, among other things, to accommodate an employee with a disability."  (Doc. # 21-6 at 7.)

"HMMA offers up to 12 weeks of family and medical leave during a 12-month period to Team Members for their own qualifying serious health conditions[] and [for] other reasons as required by law."  (Doc. # 21-3 at 3.)  "HMMA uses a third-party administrator, The Hartford, to administer employee FMLA leave."  (Doc. # 21-3 at 3.)  "FMLA leave runs concurrently with the receipt" of short-term disability (STD) and long-term disability (LTD) benefits.  (Doc. # 21-3 at 5.)  "HMMA grants employees who qualify for STD and LTD benefits up to one continuous year of leave while receiving those paid benefits[,] and this constitutes approved leave even if FMLA leave has been exhausted."  (Doc. # 21-5 at 3.)

B.     **Plaintiff's Employment with HMMA and Termination by HMMA**

HMMA hired Ms. Butler-Smith to work on its production line in 2005.  (Doc. # 21-1 at 6–7, 39; Doc. # 21-16 at 2.)  During her years at HMMA, Ms. Butler-Smith worked exclusively in the engine department.  (Doc. # 21-1 at 7.)  On or about

September 23, 2019, Ms. Butler-Smith's knee began to hurt, and her leg began to swell. (Doc. # 21-1 at 17.) She was "sent to the HMMA medical clinic," which, in turn, sent her "home to follow up with" her physician, Dr. Thornbury. (Doc. # 21-1 at 17.) Ms. Butler-Smith "applied for and was approved for FMLA leave, beginning September 25, 2019." (Doc. # 21-5 at 2.)

In his September 26, 2019 physician report, Dr. Thornbury indicated that Ms. Butler-Smith would need "to sit and rest for 15 minutes out of every 1 hour." (Doc. # 21-2 at 20.) Ms. Butler-Smith submitted Dr. Thornbury's report to Progressive Health, which relayed it to an HMMA Safety Specialist. (*See* Docs. # 21-1 at 32, 21-6 at 6, 21-9 at 8.) That Safety Specialist reviewed Ms. Butler-Smith's restrictions, observed Ms. Butler-Smith's "job station," and sent her home without an accommodation because "the stations that she work[ed] require[d] her to stand." (Docs. # 21-9 at 10, 21-6 at 15.)

On October 24, 2019, Dr. Thornbury updated Ms. Butler-Smith's work restrictions. In his October 24th physician report, Dr. Thornbury stated that she was to "limit her walking [and] standing to 15 minutes" per hour. (Docs. # 21-1 at 32–33, 21-2 at 21.) The Safety Specialist again sent Ms. Butler-Smith home without an accommodation. (Doc. # 21-6 at 16.) On January 23, 2020, Dr. Thornbury reiterated his restrictions: "limit walking [and] standing to 15 minutes" per hour. (Doc. # 21-2 at 22.) And, again, the Safety Specialist sent Ms. Butler-Smith home without an

accommodation.  (Docs. # 21-6 at 17.)  On August 6, 2020, Dr. Thornbury added the restrictions that Ms. Butler-Smith was not to lift more than 10 pounds and she was not to climb or squat.  (Doc. # 21-2 at 23.)  The Safety Specialist sent Ms. Butler-Smith "home pending clarification on light duty."  (Doc. # 21-6 at 18.)  Until March 23, 2020, Ms. Butler-Smith was on STD, and, after March 23rd, she was on LTD. (Doc. # 21-1 at 17.)

On August 20, 2020, HMMA sent Ms. Butler-Smith a letter which, in relevant part, said the following:

> HMMA cannot accommodate requests for indefinite leaves of absence. Accordingly, HMMA administratively terminates the employment of Team Members who have been on a cumulative LTD leave for six (6) months and still cannot provide a date in the near and foreseeable future when they expect to return to work.  If you remain on LTD leave until September 23, 2020, HMMA will administratively terminate your employment unless you: 1) return . . . to your assigned job at HMMA by September 23, 2020; or 2) provide a definite date in the near and foreseeable future when you will return to work with or without a reasonable accommodation; or 3) propose a reasonable accommodation that will allow you to return to work on a definitive date in the near and foreseeable future; or 4) apply for other open positions at HMMA for which you are qualified and that fit within your medical restrictions.

(Doc. # 21-15 at 6.)  On August 25, 2020, Ms. Butler-Smith contacted Jenny Neese, a Specialist of Medical Leave in the HMMA Human Resources Department.  (Doc. # 21-5 at 2–3.)  Ms. Neese says that Ms. Butler-Smith "reported [that] she had no return to work date set within the foreseeable future," that "she had restrictions that had been provided to the medical clinic [that] could not be accommodated," and

"that she anticipated the possibility of being able to return to work on February 4, 2021." (Doc. # 21-5 at 3.)

On October 1, 2020, HMMA's Employee Review Committee, led by Delicia McIntyre, "met to discuss" Ms. Butler-Smith "and the fact that she had been on short-term disability for six (6) months and long-term disability for six (6) months with no date certain for when she might return to work." (Doc. # 21-15 at 3.) The Committee considered Ms. Butler-Smith's "failure to return to her job, failure to provide a definitive date to return to her job, with or without reasonable accommodation, failure to propose a reasonable accommodation that would allow her to return to work, and failure to apply for open positions for which she was qualified [that] would fit her medical restrictions." (Doc. # 21-15 at 3–4, 8–9.) Ms. McIntyre decided that it was appropriate to terminate Ms. Butler-Smith's employment. (Doc. # 21-15 at 4.)[3]

HMMA sent Ms. Butler-Smith a termination letter on October 5, 2020. In relevant part, the termination letter said the following:

> Regretfully, HMMA must administratively terminate your employment because you have been on STD leave for six (6) months and LTD leave for six (6) months (for a total of 1 year of leave), because you have not reported to work at HMMA since September 24, 2019, because you do not have any pending application for open jobs at HMMA, and because you still cannot provide a definitive date in the foreseeable future when you will return to work.

---

[3] No one on the Committee disagreed with Ms. McIntyre's decision to terminate Ms. Butler-Smith. (Doc. # 21-15 at 4.)

(Doc. # 21-15 at 11.)  On December 1, 2020, Ms. Butler-Smith filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging that HMMA had discriminated against her because of her disability in violation of the ADA.  (Doc. # 21-2 at 15–17.)  On June 16, 2021, the EEOC issued Ms. Butler-Smith a right to sue letter.  (Doc. # 1-1.)  On September 8, 2021, Ms. Butler-Smith sued HMMA.  (Doc. # 1.)

## IV.  DISCUSSION

Ms. Butler-Smith brings three claims against HMMA.  (Doc. # 1 at 7–15.) First, Ms. Butler-Smith claims that HMMA discriminated against her in violation of the ADA.  Second, she claims that HMMA retaliated against her in violation of the ADA.  Third, she claims that HMMA retaliated against her in violation of the FMLA. HMMA has moved for summary judgment on each claim.  (Doc. # 19.)

## A.    **ADA Discrimination Claim**

HMMA first argues that Ms. Butler-Smith cannot make out a *prima facie* case of disability discrimination under the ADA.  (Doc. # 20 at 18.)  The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . discharge" from employment.  42 U.S.C. § 12112(a). To avoid summary judgment, Ms. Butler-Smith must offer "either direct or circumstantial evidence of discrimination."  *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1214 (11th Cir. 2021).

"[D]irect evidence is evidence that, 'if believed, proves the existence of a fact without inference or presumption.'" *Id.* at 1215 (quoting *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020)). "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor[,] constitute direct evidence of discrimination." *Id.* (quoting *Fernandez*, 961 F.3d at 1156). "By contrast, evidence that merely 'suggests, but does not prove, a discriminatory motive' is not direct evidence." *Id.* (quoting *Fernandez*, 961 F. 3d at 1156). Ms. Butler-Smith has provided no direct evidence of discrimination.

Since there is no direct evidence of discrimination, Ms. Butler-Smith must rely on circumstantial evidence. "[W]e evaluate that evidence under the familiar *McDonnell Douglas* burden-shifting framework." *Id.* (citing *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999)). "Under that framework," Ms. Butler-Smith "must first establish a *prima facie* case of disability discrimination. To do that, she must show that she (1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of her disability." *Id.* at 1215–16 (citing *Lewis v. City of Union City*, 934 F.3d 1169, 1179 (11th Cir. 2019)).[4]

---

[4] Instead of the *McDonnell Douglas* burden-shifting framework, Ms. Butler-Smith seeks to rely on the "convincing mosaic" framework to establish her ADA discrimination claim. (Doc. # 24 at 13–14 (first quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); and then quoting *Lewis*, 934 F.3d at 1185). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185 (quoting *Silverman v. Bd. of Educ.*, 637 F.3d

If the plaintiff makes out a *prima facie* case, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1216 (alteration omitted) (quoting *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012)).  If the employer satisfies that requirement, the burden shifts back to the plaintiff "to show that the reasons . . . articulated are merely a pretext for discrimination."  *Id.* (citing *Holland*, 677 F.3d at 1055).  "Ultimately," the plaintiff "bears the burden of showing that discrimination was the reason for her dismissal." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

HMMA does not dispute that Ms. Butler-Smith is disabled.  But HMMA asserts that she is unable to establish the last two elements of her *prima facie* case: that she is a qualified individual and that she was discriminated against because of her disability.  (Doc. # 20 at 18–21.)  The court agrees.

First, under the undisputed facts of this case, Ms. Butler-Smith is not a qualified individual.  The ADA defines a "qualified individual" as a person "who, with or without reasonable accommodation, can perform the *essential functions* of the employment position that such individual holds or desires."   42 U.S.C. § 12111(8) (emphasis added).  "The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires.  The term 'essential functions' does not include the marginal functions of

---

729, 733–34 (7th Cir. 2011), *overruled by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)).  Ms. Butler-Smith has provided no such evidence.

the position."   29 C.F.R. § 1630.2(n)(1).   "Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors."  *Lewis*, 934 F.3d at 1182 (quoting *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1230 (11th Cir. 2005)).[5]

During her years at HMMA, Ms. Butler-Smith worked exclusively in the engine department.  (Doc. # 21-1 at 7.)  During her 11-hour shifts in the engine department, Ms. Butler-Smith would stand or walk "the whole time," lift things up to or exceeding 30 pounds, carry things, pick things up, and sometimes stoop, depending on what she was working on.  (Doc. # 21-1 at 8, 36–37; Doc. # 21-6 at 7.) Ms. Butler-Smith constantly was walking and standing.  (Doc. # 21-1 at 8 ("You're standing up the whole time"); Doc. # 21-6 at 6–7 (asserting that "all jobs in [the engine] department require constant walking or standing except during recognized breaks for everyone on the line when the line is down")); 29 C.F.R. § 1630.2(n)(3)(iii) (stating that "[t]he amount of time spent on the job performing the function" is evidence of whether the function is essential).[6]  The court finds that

---

[5] "Evidence of whether a particular function is essential includes, but is not limited to," the following factors: an "employer's judgment as to which functions are essential," "[w]ritten job descriptions prepared before advertising or interviewing applicants for the job," "[t]he amount of time spent on the job performing the function," "[t]he consequences of not requiring the incumbent to perform the function," "[t]he terms of a collective bargaining agreement," "[t]he work experience of past incumbents in the job," and/or "[t]he current work experience of incumbents in similar jobs."  29 C.F.R. § 1630.2(n)(3); *see Lewis*, 934 F.3d at 1182.

[6] In a memorandum about Ms. Butler-Smith's charge of discrimination, the EEOC found that "the essential functions of the job required standing and walking."  (Doc. # 21-16 at 2.)

walking and standing were essential functions of Ms. Butler-Smith's job in the engine department.

After September 23, 2019, the work restrictions placed on Ms. Butler-Smith directly contradicted these essential functions.   On September 26, 2019, Dr. Thornbury stated that Ms. Butler-Smith would need "to sit and rest for 15 minutes out of every 1 hour." (Doc. # 21-2 at 20.)  On October 24th, Dr. Thornbury stated that she was to "limit her walking [and] standing to 15 minutes" per hour.  (Docs. # 21-1 at 32–33, 21-2 at 21.)  On January 23, 2020, Dr. Thornbury reiterated his restrictions: "limit walking [and] standing to 15 minutes" per hour.  (Doc. # 21-2 at 22.)  On August 6, 2020, Dr. Thornbury added the restrictions that Ms. Butler-Smith was not to lift more than 10 pounds and she was not to climb or squat.  (Doc. # 21-2 at 23.)  With or without accommodation, Ms. Butler-Smith could not have performed the essential functions of her job in the engine department.  (*See* Docs. # 21-6 at 7, 21-11 at 2).  Indeed, Ms. Butler-Smith's work restrictions precluded her from working any production job at HMMA.  (Docs. # 21-6 at 7, 21-11 at 2.)[7] Therefore, she is not a qualified individual.  *See Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).

---

[7] The court also notes the undisputed fact that "[t]o receive long-term disability benefits initially from The Hartford, Plaintiff had to have been deemed disabled from her occupation." (Doc. # 21-3 at 5.)  This also indicates that Ms. Butler-Smith is not a qualified individual.

Second, even if she were a qualified individual, Ms. Butler-Smith has not produced any evidence that she was terminated because of her disability. And there is no evidence that HMMA discriminated against her because of her disability. For these reasons, Ms. Butler-Smith has failed to establish a *prima facie* case of ADA disability discrimination.

But, assuming for the sake of argument that she established a *prima facie* case, her claim of ADA disability discrimination would fail at the pretext stage of the analysis. When an employer provides legitimate, non-discriminatory reasons for its actions, its "burden is 'exceedingly light.'" *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1312 (11th Cir. 2016) (quoting *Smith v. Horner*, 839 F.2d 1530, 1537 (11th Cir. 1988)). The reasons HMMA gave for terminating Ms. Butler-Smith's employment—being on leave and receiving disability coverage for a year, not reporting to work for a year, having no pending job applications, and not providing a definitive return date (Doc. # 21-15 at 11)—are all legitimate, non-discriminatory reasons. *Todd*, 998 F.3d at 1216.

Because HMMA's reasons are legitimate and non-discriminatory, Ms. Butler-Smith must show that these reasons are "a mere pretext for discrimination based on her disability." *Todd*, 998 F.3d at 1217–18 (citing *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010)). "[A]t the pretext stage of the inquiry, . . . 'our sole concern is whether unlawful discriminatory animus motivate[d]'"

HMMA's decision to terminate Ms. Butler-Smith's employment.  *Id.* at 1218 (second alteration in original) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)).  There is no evidence that HMMA's legitimate, non-discriminatory reasons are pretextual.[8]  For these reasons, Defendant's motion for summary judgment is due to be granted as to Ms. Butler-Smith's ADA disability discrimination claim.

## B.   **ADA Retaliation Claim**

HMMA argues that summary judgment should be granted on Ms. Butler-Smith's ADA retaliation claim because she has failed to exhaust her administrative remedies.  (Doc. # 20 at 25; Doc. # 25 at 10.)  The court agrees.  Before suing for ADA retaliation, "[a]n employee . . . must first exhaust her administrative remedies by filing a [c]harge of [d]iscrimination with the EEOC."  *Batson v. Salvation Army*,

---

[8] Ms. Butler-Smith says that there is evidence of discriminatory animus.  First, she argues that HMMA's failure to provide "reasonable modifications and/or accommodations" to her employment is evidence of discrimination.  (Doc. # 1 at 9; Doc. # 24 at 15, 17–18.)  "The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable."  *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997)).  There is no evidence that Ms. Butler-Smith ever identified an accommodation (or showed that such an accommodation was reasonable).  (*See* Doc. # 21-1 at 9 (saying she "was unable to" "discuss accommodations that [she] wanted with anyone at HMMA").)  So, her argument fails.  Second, she argues that HMMA's failure to engage "in any meaningful interactive communication or any interactive process with" her about "her disability and related or reasonable accommodations" is evidence of discrimination.  (Doc. # 24 at 15–18.)  HMMA is not required to engage in an interactive process.  As the regulation cited by Ms. Butler-Smith states, "To determine the appropriate reasonable accommodation it *may* be necessary . . . to initiate an informal, interactive process with the individual with a disability in need of the accommodation."  29 C.F.R. § 1630.2(o)(3) (emphasis added).

897 F.3d 1320, 1327 (11th Cir. 2018) (citing *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001)); *Stamper v. Duval Cnty. Sch. Bd.*, 863 F.3d 1336, 1339–40 (11th Cir. 2017).  A "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (quoting *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1332 (11th Cir. 2000)).  "[J]udicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate." *Batson*, 897 F.3d at 1327 (quoting *Gregory*, 355 F.3d at 1279–80).

In the charge of discrimination Ms. Butler-Smith filed with the EEOC on December 1, 2020, she did not mention an ADA retaliation claim.  (Doc. # 21-2 at 15–18.)  The only claim she raised was her ADA discrimination claim.  (Doc. # 21-2 at 15–18.)  Because Ms. Butler-Smith did not raise a claim for ADA retaliation in her EEOC charge, she has not exhausted her administrative remedies, and her ADA retaliation claim is not properly before the court.

But, assuming Ms. Butler-Smith exhausted her administrative remedies, summary judgment is still due to be granted on her ADA retaliation claim.  "The ADA prohibits retaliation against an individual for opposing an unlawful practice or making a charge under the ADA." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th

Cir. 2016) (citing 42 U.S.C. § 12203(a)). "To prevail on her ADA retaliation claim, Plaintiff must show that: (1) she engaged in a statutorily protected expression[;] (2) she suffered an adverse employment action[;] and (3) there was a causal link between the two." *Id.*

Ms. Butler-Smith does not argue that she was retaliated against for anything she said. Rather, she argues that HMMA "retaliated against" her "due to her disability and/or perceived disability" in violation of the ADA. (Doc. # 1 at 10.) However, in her opposition to HMMA's motion for summary judgment, she argues that she "participated in a protected activity each time she attempted to return to work seeking a reasonable accommodation as defined by her physician." (Doc. # 24 at 20.) In its reply, HMMA concedes that Ms. Butler-Smith's "presentation of doctor's restrictions is close enough to a request for accommodation" and, thus, is protected. (Doc. # 25 at 10.) So, Ms. Butler-Smith has engaged in protected expression. *Frazier-White*, 818 F.3d at 1258 ("The first element [of an ADA retaliation claim] may be met by a request for a reasonable accommodation.").

Again, in her complaint, Ms. Butler-Smith does not allege what adverse employment action HMMA took against her for her protected expression. (Doc. # 1 at 10–12.) However, in her opposition to HMMA's motion for summary judgment, Ms. Butler-Smith says that HMMA's repeated refusal to allow her to return to work and then HMMA's termination of her employment were adverse actions. (Doc. # 24

at 21.)  HMMA replies that the only adverse action at issue is her termination.  (Doc. # 25 at 10.)  For the sake of argument, the court assumes that HMMA took adverse actions against Ms. Butler-Smith because of her protected expression.

"The third element" of an ADA retaliation claim "requires a showing of but-for causation."  *Frazier-White*, 818 F.3d at 1258 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360–62 (2013)).  Ms. Butler-Smith argues that HMMA's knowledge of her protected conduct is enough to establish causation.  (Doc. # 24 at 21–22.)  But that is a misstatement of the law.  A plaintiff establishes causation by providing "sufficient evidence" that the employer had knowledge of the protected expression *and* "that there was a close temporal proximity between this awareness and the adverse" employment action.  *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003)).

"If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law."  *Higdon*, 393 F.3d at 1220.  Generally, a three-to-four-month period between "knowledge of protected activity and" the adverse employment action is "insufficient to show causal connection."  *Higdon*, 393 F.3d at 1220 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268,

273 (2001)); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam).

Ms. Butler-Smith has not explained how her protected expression and the adverse employment actions taken against her relate under this proper causation standard. And the court declines to make arguments that Ms. Butler-Smith has not made. *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."). For these reasons, HMMA's motion for summary judgment is due to be granted as to Ms. Butler-Smith's ADA retaliation claim.

## C. **FMLA Retaliation Claim**

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "To preserve the availability of [the rights provided by the FMLA], and to enforce them, the FMLA create[d] two types of claims: interference claims . . . and retaliation claims." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001); 29 U.S.C. § 2615.

Ms. Butler-Smith alleges that HMMA retaliated against her in four ways: (1) by failing to provide her with adequate notice, information, and leave required

20

by the FMLA; (2) by refusing to allow her to request leave provided by the FMLA; (3) by wrongfully threatening her with termination and loss of accrued benefits; and (4) by terminating her in retaliation for requesting or attempting to request leave provided by the FMLA.  (Doc. # 1 at 13–14.)  In her deposition, Ms. Butler-Smith admits that she does not know when (1) occurred.  (Doc. # 21-1 at 26.)  And (2) and part of (1) cannot be presumed true because it is undisputed that Ms. Butler-Smith requested and received FMLA leave.  (Doc. # 21-5 at 2.)  HMMA argues that only (4) is at issue.  (Doc. # 20 at 26–27.)  There is no evidence of (3) in the record, and, in her opposition to HMMA's motion for summary judgment, Ms. Butler-Smith does not contest that only (4) remains.  (Doc. # 24 at 22–23.)  So, the court only addresses (4).

For Ms. Butler-Smith to succeed on her FMLA retaliation claim, she "must demonstrate that" HMMA "intentionally discriminated against [her] in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207.  "In other words," Ms. Butler-Smith must show that HMMA's "actions 'were motivated by an impermissible retaliatory or discriminatory animus.'" *Id.* (quoting *King v. Preferred Tech. Grp.*, 166 F.3d 887, 891 (7th Cir. 1999)).  "When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, we apply the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas*." *Id.*

(citing *Brungart v. BellSouth Telecomms. Inc.*, 231 F.3d 791, 798 (11th Cir. 2000)). There is no direct evidence of retaliatory intent.  So, Ms. Butler-Smith must rely on circumstantial evidence.

When relying on circumstantial evidence, "[i]n order to state a claim of retaliation, an employee must allege that: (1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Id.* (citing *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir. 2000)).  If Ms. Butler-Smith can establish a *prima facie* case of retaliation, then HMMA must "'articulate a legitimate, nondiscriminatory reason' for [her] termination." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017) (quoting *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010)).  If HMMA articulates a legitimate, non-discriminatory reason, then Ms. Butler-Smith must show that the reason "was in fact a pretext designed to mask illegal discrimination." *Id.*

HMMA concedes that Ms. Butler-Smith satisfies the first two elements of a *prima facie* case: she used FMLA leave (a protected activity) and was terminated (an adverse employment decision).  (Doc. # 20 at 27.)  But HMMA argues that Ms. Butler-Smith is unable to satisfy the third element—causation.  (Doc. # 20 at 27.) And the court, once again, agrees.  Ms. Butler-Smith has not provided any evidence that demonstrates causation, and the court will not make arguments for her. *Resol.*

22

*Tr. Corp.*, 43 F.3d at 599.  Therefore, HMMA's motion for summary judgment is due to be granted as to Ms. Butler-Smith's FMLA retaliation claim.

## V.  CONCLUSION

For the reasons provided, it is ORDERED that Defendant's motion for summary judgment (Doc. # 19) is GRANTED.  It is further ORDERED that all other pending motions (Docs. # 43–51) are DENIED as moot.

Final judgment will be entered separately.

DONE this 6th day of April, 2023.

_____
/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE